INSTITUTE FOR FREE SPEECH
Alan Gura, SBN 178221
    agura@ifs.org
Julie Smith, SBN 147178
    julie.smith@ifs.org
1150 Connecticut Avenue, N.W.,
    Suite 801
Washington, DC 20036
Phone: 202.967.0007
Fax:    202.301.3399

Attorneys for Plaintiffs
Mobilize the Message, LLC; Moving Oxnard Forward, Inc.; and Starr Coalition for Moving Oxnard Forward

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MOBILIZE THE MESSAGE, LLC; MOVING OXNARD FORWARD, INC.; and STARR COALITION FOR MOVING OXNARD FORWARD,<br><br>   Plaintiffs,<br><br>   v.<br><br>ROB BONTA, in his official capacity as Attorney General of California,<br><br>   Defendant. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF** |

JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as plaintiffs allege that defendant is violating 42 U.S.C. § 1983 by depriving them, under color of state law, of rights, privileges, and immunities secured by the First and Fourteenth Amendments to the United States Constitution.

2. This Court is the proper venue for this action per 28 U.S.C. § 1391(b) as a substantial part of the events and omissions giving rise to the claim have occurred and are occurring in this judicial district.

## INTRODUCTION

3. A door-to-door salesperson hawking household goods can work in California as an independent contractor. That same person knocking on the same doors, selling a political candidate or ballot measure, cannot. A person asking passersby on Oxnard's streets to sign up for a credit card can work as an independent contractor. A person asking the same passersby to sign a ballot measure petition cannot. A person delivering newspapers can work as an independent contractor. A campaign worker delivering political petitions or pamphlets to the same homes, cannot.

4. California's discrimination against political speech is a new development. Until recently, the law determining workers' classification as either employees or independent contractors applied broadly throughout the state's economy. But the legislature's comprehensive attack on independent contracting recalls the adage that an omelet can't be made without breaking a few eggs—and so, powerful lobbies and even the voters themselves have unscrambled favorite "eggs," restoring through narrow exemptions the old order for this or that trade.

5. Ironically, the business of political campaigning has been left behind in this most political process. Yet the right to knock on doors on behalf of candidates, or gather signatures to qualify ballot measures, does not require a legislative favor. It already enjoys the First Amendment's protection, which forbids content-based speech discrimination against political campaigns. California's relegation of plaintiffs' campaign speech to second-class status under the Labor Code should be immediately and permanently enjoined.

# THE PARTIES

6. Plaintiff Mobilize the Message, LLC, ("MTM") is a Florida limited liability company providing door-knocking and signature gathering services.

7. Plaintiff Moving Oxnard Forward, Inc., ("MOF") is a California nonprofit corporation dedicated to making Oxnard, California's government more efficient and transparent. It seeks to ensure that Oxnard residents receive value for the taxes and fees they pay, to see to it that Oxnard's government provides quality services at a low cost, and to improve Oxnard's business climate and lower the cost of operating a business in Oxnard. MOF attempts to focus Oxnard's City Hall on providing basic goods and services such as roads, infrastructure, and public safety, while reducing bureaucracy.

8. Plaintiff Starr Coalition for Moving Oxnard Forward ("Starr Coalition") is MOF's political action committee. Once MOF decides that its community action requires going to the ballot box, Starr Coalition handles all aspects of the initiative campaigns, including creating, qualifying and enacting ballot measures in Oxnard's municipal elections. Starr Coalition's measures regularly appear on the ballot, and at times prevail.

9. Defendant Rob Bonta is California's Attorney General. As such, he has enforced and continues enforcing the laws, customs, practices and policies challenged in this action, including California's laws relating to the classification of workers as either employees or independent contractors. Defendant Bonta is sued in his official capacity.

# STATEMENT OF FACTS

*Worker Classification: Employee or Independent Contractor?*

10. With respect to those who hire them, workers are typically classified as either employees or independent contractors. A hirer has

greater control over employees than over independent contractors, but with that control come often expensive obligations, such as the payment of unemployment insurance taxes and its associated administrative costs, Cal. Unemp. Ins. Code §§ 976, 13020, 13021; workers' compensation insurance, Cal. Labor Code § 3700; and sick leave, Cal. Labor Code § 246. Employers also face additional payroll expenses, and may also be more readily susceptible to tort claims arising from their employees' conduct, generating additional insurance costs.

11. From a worker's perspective, formal employment may include certain benefits, but often carries a significant cost in loss of freedom and flexibility over one's working hours and conditions.

12. Many pursuits make personal and economic sense, for hirer and worker, only within the context of an employment or independent contractor relationship. Whichever relationship one prefers, as a worker or as one hiring others, depends on the circumstances of the work at hand.

*The Regulatory Scheme*

13. Prior to 2018, California's test for classifying workers as either employees or independent contractors was set forth, for all purposes, in *S.G. Borello & Sons, Inc. v. Dep't of Industrial Relations*, 48 Cal. 3d 341 (1989). *Borello* employed a multi-factor balancing test under which no one factor was dispositive. But "[w]hether a common law employer-employee relationship exists [under *Borello*] turns foremost on the degree of a hirer's right to control how the end result is achieved." *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal.4th 522, 528 (2014) (citing *Borello*, 48 Cal.3d at 350).

14. In 2018, California's Supreme Court adopted a different, three-part test—the "ABC test"—to determine workers' classification for purposes of the California Industrial Welfare Commission's wage orders.

The ABC test presumes that workers are employees unless "the hiring entity establishes:

    (A)    that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; *and*

    (B)    that the worker performs work that is outside the usual course of the hiring entity's business; *and*

    (C)    that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed."

*Dynamex Operations West, Inc. v. Superior Court*, 4 Cal. 5th 903, 957 (2018) (citations and footnote omitted) (paragraph breaks added).

15. In *Dynamex*'s wake, California's legislature enacted Assembly Bill 5 ("AB 5"), which codified *Dynamex*'s application of the ABC test to wage orders, and extended the ABC test's application to the entirety of California's Labor and Unemployment Insurance Codes. That general imposition of the ABC test is now codified at Cal. Labor Code § 2775(b)(1).

16. However, AB 5 contained myriad exemptions for livelihoods that are again, notwithstanding *Dynamex*, governed by the *Borello* test for all purposes. Assembly Bills 170 and 2257 enacted additional *Borello* exemptions at the behest of various lobbies. And in the November 2020 election, California's voters enacted Proposition 22, codified at Cal. Bus. & Prof. Code § 7451, which classifies drivers for app-based companies—AB 5's original prime targets—as independent contractors.

17. Accordingly, since 2018, the question of whether a particular California worker is classified under the ABC test, under *Borello*, or under some definitive legislative command, is determined by the ever-shifting political vicissitudes of the moment within the legislature and among the voters.

18. Two exemptions from the ABC test are of special relevance to this action: the exemptions for "direct sales salespersons," and for "newspaper distributors" and "newspaper carriers."

19. Cal. Labor Code § 2783 provides that "Section 2775 and the holding in Dynamex do not apply to" various listed occupations listed in that section, "and instead, the determination of employee or independent contractor status for individuals in those occupations shall be governed by *Borello*."

20. Among these occupations exempted from Section 2775 and *Dynamex*'s application of the ABC test is "[a] direct sales salesperson as described in Section 650 of the Unemployment Insurance Code, so long as the conditions for exclusion from employment under that section are met." Cal. Labor Code § 2783(e).

21. Cal. Unemp. Ins. Code § 650 provides that "'Employment' does not include services performed as a . . . direct sales salesperson . . . by an individual," if

    (a) The individual . . . is engaged in the trade or business of primarily in person demonstration and sales presentation of consumer products, including services or other intangibles, in the home or sales to any buyer on a buy-sell basis, a deposit-commission basis, or any similar basis, for resale by the buyer or any other person in the home or otherwise than from a retail or wholesale establishment.

    (b) Substantially all of the remuneration (whether or not paid in cash) for the services performed by that individual is directly related to sales or other output (including the performance of services) rather than to the number of hours worked by that individual.

    (c) The services performed by the individual are performed pursuant to a written contract between that individual and the person for whom the services are performed and the contract provides that the individual will not be treated as an employee with respect to those services for state tax purposes.

22. The Direct Selling Association "work[ed]" with AB 5's sponsor to enact the exemption, and understands that the exemption provides "that direct sellers are clearly and specifically independent contractors." *Direct Selling Association Applauds Direct Seller Exemption in California AB 5*, Sep. 26, 2019, https://bit.ly/3xOArGF.

23. Newspaper distributors and carriers are also exempted from the ABC test and subject to *Borello*, Cal. Labor Code § 2783(h)(1), as "[c]lassifying independent contractors as employees would impose at least $80 million in new costs on the newspaper industry." Bill Swindell, *Legislature passes one-year exemption for newspaper carriers from AB 5*, The Press Democrat, Sep. 20, 2019, https://bit.ly/3gVc0Aq.

24. California's legislature anticipated legal challenges to its new worker classification scheme, and chose a remedy in the event that any part of the scheme were struck down. "If a court of law rules that the [ABC test] cannot be applied to a particular context based on grounds other than an express exception to employment status as provided under [the Labor Code, the Unemployment Insurance Code, or an Industrial Welfare Commission order], then the determination of employee or independent contractor status in that context shall instead be governed by the California Supreme Court's decision in [*Borello*]." Cal. Labor Code § 2775(b)(3).

25. "Misclassifying" an employee as an independent contractor carries significant criminal and civil penalties. Civil penalties for misclassifying employees begin at $5,000 per violation. Cal. Labor Code § 226.8(b). Even the unintentional failure to withhold unemployment insurance tax is a misdemeanor punishable by $1,000 and imprisonment up to a year. Cal. Unemp. Ins. Code § 2118. And misclassifying a worker can trigger a variety of other penalties, *e.g.,* for not reporting a new or

1 rehired employee, *id.* § 1088.5(e); not reporting a new independent
2 contractor, *id.* § 1088.8(e); or not electronically reporting wages paid to
3 employees, *id.* § 1114(b); *see, generally,* Cal. Empl. Dev. Dep't, *Penalty*
4 *Reference Chart*, https://www.edd.ca.gov/pdf_pub_ctr/de231ep.pdf.

5   26.   Moreover, the Labor Code Private Attorneys General Act of
6 2004 enables employees to sue alleged employers to recover civil penalties
7 for Labor Code violations. Cal. Labor Code §§ 2699(a) and (g)(1).
8 Prevailing employees may recover attorney fees and costs. *Id.* § 2699(g)(1).

9   27.   Putative employers are also subject to claims "for injunctive
10 relief to prevent the continued misclassification of employees as
11 independent contractors" brought by the state's attorney general, district
12 attorneys, or various city or city and county attorneys, "upon their own
13 complaint or upon the complaint of a board, officer, person, corporation, or
14 association." Cal. Labor Code § 2786.

15   *Plaintiff MTM's Use of Doorknockers and Signature Gatherers*

16   28.   MTM hires doorknockers to canvass neighborhoods and
17 personally engage voters in the home on behalf of its client campaigns, in
18 an effort to persuade them to vote for and gather feedback on candidates
19 and ballot measures. MTM also hires signature gatherers to persuade
20 voters, at home and in public places, to sign petitions qualifying measures
21 for the ballot.

22   29.   MTM hires doorknockers and signature gatherers on an
23 independent contractor basis. Under the typical arrangement, MTM's
24 doorknockers and signature gatherers supply their own appropriate
25 clothing, cell phones, computers, and transportation to the work areas.
26 When the work requires driving, doorknockers and signature gatherers
27 supply their own vehicles, though MTM provides gas cards to offset the
28 transportation costs.

30. MTM provides workers optional housing in the campaign areas, and in the case of doorknockers, identifies the homes to be contacted, but it does not pay time-based wages. Rather, MTM pays doorknockers only for reaching particular door milestones. Signature gathering campaigns may target particular areas to satisfy legal requirements, but gatherers may gather signatures from anywhere within such boundaries, and are paid per valid signature obtained. Pay for all MTM workers is negotiable.

31. Signature gatherers' pay also fluctuates with market conditions. When many competing petitions circulate, signature gatherers can and do demand more money for their services. It is also easier to gather signatures earlier in the qualification process. Consequently, a gatherer's price per signature may rise as time winds down and the signature gathering campaign approaches its goal.

32. MTM provides some training and a generalized script or talking points, but door knockers and signature gatherers are expected to use their improvisational, conversational and persuasive skills to "sell" MTM's client campaigns.

33. MTM does not prescribe fixed hours, breaks, or schedules, apart from requesting that door knockers perform their work during the times of day when people are most likely to be home.

34. MTM's door knockers and signature gatherers understand and agree that they provide MTM their services as independent contractors.

35. Considering MTM's lack of control over its door knockers and signature gatherers, and the degree of independent judgment that these individuals must exercise in generating the performance milestones for which MTM pays them, MTM's doorknockers and signature gatherers

have always been essentially independent direct sales salespeople—notwithstanding that their advocacy is political rather than commercial.

*Oxnard Plaintiffs' Use of Signature Gatherers*

36. As MOF and Starr Coalition's purpose is to effect political change by enacting ballot measures, they depend utterly on signature gatherers who persuade voters, at home and in public places, to sign petitions qualifying measures for the ballot.

37. MOF and Starr Coalition have historically hired signature gatherers as independent contractors. MOF and Starr Coalition paid these gatherers by the signature, but exercised no control over when, where, or how these gatherers worked.

38. Typically, MOF and Starr Coalition's signature gatherers would set their own schedule, and walk around highly-trafficked public spaces or go door-to-door to speak to voters and persuade them to sign petitions to qualify MOF and Starr Coalition's ballot measures. MOF and Starr Coalition did not tell their signature gatherers when or where to gather signatures. They were expected to use their improvisational, conversational and persuasive skills to "sell" MOF and Starr Coalition's ballot measures.

39. As with MTM's doorknockers and signature gatherers, MOF and Starr Coalition's signature gatherers' pay is negotiable, and has fluctuated with market conditions.

40. MOF and Starr Coalition's signature gatherers understood and agreed that they provided MOF and Starr Coalition their services as independent contractors.

41. Considering MOF and Starr Coalition's lack of control over their signature gatherers, and the degree of independent judgment that these individuals exercised in generating the performance milestones for

which plaintiffs paid them, MOF and Starr Coalition's signature gatherers have always been essentially independent direct sales salespeople—notwithstanding that their advocacy is political rather than commercial.

*The Regulatory Scheme's Impact on Plaintiffs' Political Speech*

42. Under *Borello*, the doorknockers and signature gatherers that plaintiffs would hire would be classified as independent contractors.

43. However, under *Dynamex* and Cal. Labor Code § 2775, these workers would most likely be classified as employees. All such workers would pass the "A" portion of the ABC test—they are, in fact and under contract, free from plaintiffs' supervision and control. Most such workers would also pass the "C" portion of the ABC test, in that they generally perform the same work or work of a similar nature. But they could probably not pass the "B" portion of the ABC test, because their work falls within the usual course of plaintiffs' businesses.

44. Prior to AB 5's enactment, MTM provided its services in California. However, MTM abandoned the California market upon AB 5's enactment. MTM passed on doorknocking and signature gathering contracts in California because it cannot afford the administrative expenses of hiring its independent contractors as employees, and it does not wish to encourage inefficient work by disconnecting performance milestones from pay.

45. MTM intends to provide its services in California, including to MOF and Starr Coalition, but refrains from doing so solely because hiring doorknockers and signature gatherers as employees, per the ABC test, is infeasible. MTM reasonably fears criminal and civil penalties for "misclassifying" workers as independent contractors, as well as the costs of defending itself from misclassification claims.

46. MOF and Starr Coalition intend to participate in Oxnard's 2022 municipal elections. Starr Coalition has already prepared ballot language for one measure that it would seek to qualify for that election, the "Oxnard Property Tax Relief Act." Pursuant to Cal. Const. art. XIII C, § 3, the measure would require that Oxnard's pension obligations be funded by the city's general and other available funds, as is the case with most of California's cities, rather than through a special property tax. Starr Coalition is also drafting additional ballot measures to be qualified for the same election.

47. The time to start gathering signatures for the 2022 election is now. Any additional delays in beginning the signature-gathering campaign jeopardizes Starr Coalition's odds of gathering sufficient signatures in time to qualify for the ballot, especially as additional or competing signature-gathering petitions are launched. Moreover, delaying the completion of Starr Coalition's signature gathering campaigns delays its ability to effectively proceed to the next phase of advocating for the qualified measures' adoption by voters.

48. Starr Coalition intends to immediately hire MTM to gather signatures for the Oxnard Property Tax Relief Act and their other measures. Failing that, it intends to hire its own signature gatherers as independent contractors, as it has done in years past before the advent of AB 5. Given MOF and Starr Coalition's limited resources, Starr Coalition cannot afford the burden of hiring signature gatherers as employees.

49. Starr Coalition currently refrains from hiring signature gatherers solely because doing so as an employer, per the ABC test, is infeasible. It reasonably fears criminal and civil penalties for "misclassifying" signature gatherers as independent contractors, as well as the costs of defending itself from misclassification claims.

50. Absent paid signature gatherers, Starr Coalition must rely on volunteers, including the volunteer efforts of its otherwise-employed principals to gather signatures. In its experience, Starr Coalition cannot gather enough signatures to qualify a measure for the ballot using only volunteer labor. Lack of access to paid signature gatherers, caused solely by the ABC test, is thus preventing MOF and Starr Coalition from speaking to the voters and qualifying their ballot measures.

COUNT I
FIRST AMENDMENT RIGHT OF FREE SPEECH, 42 U.S.C. § 1983
APPLICATION OF THE ABC TEST TO DOORKNOCKERS

51. Plaintiffs reallege and incorporate paragraphs 1 through 50 of this complaint.

52. "[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (citations omitted).

53. A law engages in content-based discrimination if, in regulating speech, it "draws distinctions based on the message a speaker conveys." *Id.* (citation omitted). Laws do so, and are subject to strict scrutiny, if they "defin[e] regulated speech by particular subject matter," or "by its function or purpose." *Id.* at 163-64.

54. California's regime for worker classification discriminates against speech on the basis of its content, as it defines regulated speech according to its particular subject matter, function, and purpose. It also treats commercial speech more favorably than it treats political speech.

55.     But for Cal. Labor Code § 2783(e), direct sales salespersons who work on the same terms that plaintiffs would offer doorknockers would be classified as employees under the ABC test. But Section 2783(e) exempts such direct sales salespersons from the ABC test's application, and instead causes their classification as independent contractors under the rule of *Borello*. Thus, a worker hired to visit homes to engage in persuasive speech is classified as an employee or as an independent contractor, depending on whether the speech concerns a political candidate or the demonstration or sale of goods and services.

56.     But for Cal. Labor Code § 2783(h)(1), newspaper distributors and carriers who work on the same terms as plaintiffs would offer doorknockers would be classified as employees under the ABC test. But Section 2783(h)(1) exempts such newspaper distributors and carriers from the ABC test's application, and instead causes their classification as independent contractors under the rule of *Borello*. Thus, a worker hired to visit homes to distribute written materials about politics is classified as an employee or as an independent contractor, depending on whether the publications are a candidate's campaign material, or newspapers that often discuss, endorse, and oppose political candidates.

57.     California lacks a compelling state interest in classifying doorknockers differently from direct sales salespersons, newspaper distributors, and newspaper carriers, based on the content of their speech.

58.     California's content-based regulation of speech, subjecting doorknockers to the ABC test, but classifying direct sales salespersons, newspaper distributors, and newspaper carriers per *Borello*, is not narrowly tailored to achieving any compelling state interest.

59.     By classifying doorknockers per the ABC test, while classifying direct sales salespersons, newspaper distributors, and newspaper carriers

per *Borello*, Defendant, under color of law, deprives Plaintiffs, their customers, and their audience, of their right of free speech guaranteed by the First and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983, and are therefore entitled to declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendant's unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

### COUNT II
### FIRST AMENDMENT RIGHT OF FREE SPEECH, 42 U.S.C. § 1983
### APPLICATION OF THE ABC TEST TO SIGNATURE GATHERERS

60. Plaintiffs reallege and incorporate paragraphs 1 through 59 of this complaint.

61. But for Cal. Labor Code § 2783(e), direct sales salespersons who work on the same terms that plaintiffs would offer signature gatherers would be classified as employees under the ABC test. But Section 2783(e) exempts such direct sales salespersons from the ABC test's application, and instead causes their classification as independent contractors under the rule of *Borello*. Thus, a worker hired to visit homes or interact with people in public to engage in persuasive speech is classified as an employee or as an independent contractor, depending on whether the speech solicits signatures on ballot qualification petitions or the demonstration or sale of goods and services.

62. But for Cal. Labor Code § 2783(h)(1), newspaper distributors and carriers who work on the same terms as plaintiffs would offer signature gatherers would be classified as employees under the ABC test. But Section 2783(h)(1) exempts such newspaper distributors and carriers from the ABC test's application, and instead causes their classification as independent contractors under the rule of *Borello*. Thus, a worker hired to

1 deliver papers to homes is classified as an employee or as an independent
2 contractor, depending on whether the papers are petitions to qualify a
3 ballot measure for which signatures are sought, or newspapers that often
4 discuss, endorse, and oppose ballot measures.

5     63.    California lacks a compelling state interest in classifying
6 signature gatherers differently from direct sales salespersons, newspaper
7 distributors, and newspaper carriers, based on the content of their speech.

8     64.    California's content-based regulation of speech, subjecting
9 signature gatherers to the ABC test, but classifying direct sales
10 salespersons, newspaper distributors, and newspaper carriers per *Borello*,
11 is not narrowly tailored to achieving any compelling state interest.

12     65.    By classifying signature gatherers per the ABC test, while
13 classifying direct sales salespersons, newspaper distributors, and
14 newspaper carriers per *Borello*, Defendant, under color of law, deprives
15 Plaintiffs, their customers, and their audience, of their right of free speech
16 guaranteed by the First and Fourteenth Amendments to the United
17 States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C.
18 § 1983, and are therefore entitled to declaratory and preliminary and
19 permanent injunctive relief against continued enforcement and
20 maintenance of Defendant's unconstitutional customs, policies, and
21 practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

PRAYER FOR RELIEF

    WHEREFORE, Plaintiffs Mobilize the Message, LLC; Moving Oxnard Forward, Inc.; and Starr Coalition for Moving Oxnard Forward request that judgment be entered in their favor as follows:

    A.    Orders preliminarily and permanently enjoining Defendant, his officers, agents, servants, employees, and all persons in active concert or participation with him who receive actual

notice of the injunction, from applying the ABC Test to classify Plaintiffs' doorknockers and signature gatherers;

B. Declaratory relief consistent with the injunction, to the effect that California's discriminatory application of the ABC classification test to Plaintiffs' doorknockers and signature gatherers, per Cal. Labor Code § 2775(b)(1) or any other authority, while applying the *Borello* classification test to direct sales salespersons, newspaper distributors, and newspaper carriers, violates the Plaintiffs' right to free speech, and the free speech rights of Plaintiffs' customers and audience, secured by the First and Fourteenth Amendments; and consequently declaring further that, pursuant to Cal. Labor Code § 2775(b)(3), Plaintiffs' doorknockers and signature gatherers must be classified under *Borello*.

C. Costs of suit;

D. Attorney's fees and expenses pursuant to 42 U.S.C. § 1988; and

E. Any other relief as the Court deems just and appropriate.

Dated: June 23, 2021

Respectfully submitted,

By: /s/ Alan Gura
Alan Gura (SBN 178221)
agura@ifs.org
Julie Smith (SBN 147178)
julie.smith@ifs.org
INSTITUTE FOR FREE SPEECH
1150 Connecticut Avenue, N.W., Suite 801
Washington, DC 20036
Phone: 202.967.0007
Fax:    202.301.3399

Attorneys for Plaintiffs
Mobilize the Message, LLC; Moving Oxnard Forward, Inc.; and Starr Coalition for Moving Oxnard Forward