1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ROB BONTA
Attorney General of California
HEATHER HOESTEREY
Supervising Deputy Attorney General
JOSE A. ZELIDON-ZEPEDA
Deputy Attorney General
State Bar No. 227108
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3879
  Fax:  (415) 703-1234
  E-mail:  Jose.ZelidonZepeda@doj.ca.gov
*Attorneys for Defendant Attorney General*
*Rob Bonta, in his official capacity*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MOBILIZE THE MESSAGE, LLC; MOVING OXNARD FORWARD, INC.; and STARR COALITION FOR MOVING OXNARD FORWARD,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**ROB BONTA, in his official capacity as Attorney General of California,**<br><br>Defendant. | 2:21-cv-05115 VAP (JPRx)<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Date:      August 2, 2021<br>Time:      2:00 p.m.<br>Judge:     The Honorable<br>              Virginia A. Phillips<br>Trial Date:   Not set<br>Action Filed: 6/23/2021 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 2

    A.    The California Supreme Court's *Dynamex* Decision Adopted the ABC Test. ........................................................................................... 2

    B.    Assembly Bill 5 Codifies the ABC Test and Expands Its Application. ....................................................................................... 3

    C.    Assembly Bill 5 Exempts Certain Occupations from the ABC Test. .............................................................................................. 4

    D.    Allegations of the Complaint. .............................................................. 5

LEGAL STANDARD ......................................................................................... 8

ARGUMENT ....................................................................................................... 8

    I.    Plaintiffs Are Not Likely to Succeed on Their First Amendment Claims. ............................................................................................... 8

        A.    AB 5's Plain Terms Demonstrate That It Is a Generally Applicable Economic Regulation and Does Not Target Any Speech. ...................................................................... 8

        B.    Federal Courts Have Rejected the Types of AB 5 Challenges That Plaintiffs Bring Here. .................................. 11

    II.    Plaintiffs Cannot Meet Their Burden on the Discretionary Factors. ............................................................................................. 14

    III.    The Public Interest Weighs Against an Injunction. ........................... 17

CONCLUSION .................................................................................................. 18

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*3570 East Foothill Blvd., Inc. v. City of Pasadena*
   912 F. Supp. 1257 (C.D. Cal. 1995) ................................................................. 8

*Alliance for the Wild Rockies v. Cottrell*
   632 F.3d 1127 (9th Cir. 2011) ......................................................................... 8

*American Society of Journalists & Authors v. Becerra*
   No. CV-19-10645-PSG, 2020 WL 1444909 (C.D. Cal., March 20,
   2020) ....................................................................................... 11, 12, 17

*Anderson v. U.S.*
   612 F.2d 1112 (9th Cir. 1979) .................................................................... 8, 16

*Burford v. Sun Oil Co.*
   319 U.S. 315 (1943) ....................................................................................... 18

*Cal. Trucking Ass'n v. Bonta*
   996 F.3d 644 (9th Cir. 2021) ....................................................................... 2, 13

*Coalition for Econ. Equity v. Wilson*
   122 F.3d 718 (9th Cir. 1997) ........................................................................ 16

*Crossley v. California*
   479 F. Supp. 3d 901 (S.D. Cal. 2020) ......................................................... 12, 13

*Doe v. Harris*
   772 F.3d 563 (9th Cir. 2014) ........................................................................ 15

*Dymo Indus., Inc. v. Tapeprinter, Inc.*
   326 F.2d 141 (9th Cir. 1964) ......................................................................... 8

*Dynamex Operations W. v. Super. Ct.*
   4 Cal. 5th 903 (Cal. 2018) .................................................................. 2, 3, 4, 16

*First Franklin Fin. Corp. v. Franklin First Fin. Ltd.*
   356 F. Supp. 2d 1048 (N.D. Cal. 2005) ........................................................ 15

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

4

*Fund for Animals v. Lujan*
  962 F.2d 1391 (9th Cir. 1992) ................................................................ 17

5

6

*Golden Gate Restaurant Ass'n v. City & Cty. of S. F.*
  512 F.3d 1112 (9th Cir. 2008) ......................................................... 16, 18

7

8

*Intern'l Franchise Ass'n, Inc. v. City of Seattle*
  803 F.3d 389 (9th Cir. 2015) ................................................................... 9

9

10

*Kiva Health Brands LLC v. Kiva Brands Inc.*
  402 F. Supp. 3d 877 (N.D. Cal. 2019) ................................................... 15

11

*Kobell v. Suburban Lines, Inc.*
  731 F.2d 1076 (3d Cir. 1984) ................................................................ 14

12

13

*Latta v. Otter*
  771 F.3d 496 (9th Cir. 2014) ................................................................. 16

14

15

*Martin v. City of Struthers*
  319 U.S. 141 (1943) ................................................................................ 9

16

17

*Maryland v. King*
  567 U.S. 1301 (2012) ....................................................................... 16, 18

18

19

*Metromedia Broad. Corp. v. MGM/UA Entm't Co, Inc.*
  611 F. Supp. 415 (C.D. Cal. 1985) ........................................................ 15

20

21

*Miller for and on Behalf of N.L.R.B. v. Cal. Pac. Medic. Ctr.*
  991 F.2d 536 (9th Cir. 1993) ................................................................. 14

22

23

*Olson v. State of Cal.*
  No. CV 19-10956-DMG, 2020 WL 905572 (C.D. Cal. Feb. 10,
  2020) ................................................................................................ 13, 17

24

25

*Pac. Coast Horseshoeing Sch. v. Kirchmeyer*
  961 F.3d 1062 (9th Cir. 2020) ................................................................. 9

26

27

*Parada v. E. Coast Transp., Inc.*
  62 Cal.App.5th 692 (Cal. Ct. App. 2021) .............................................. 13

28

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3

4

*People v. Super. Ct., L.A. Cty.*
  57 Cal.App.5th 619 (Cal. Ct. App. 2020)........................................................ 2, 13

5

6

*People v. Uber Techs.*
  56 Cal.App.5th 266 (Cal. Ct. App. 2020)........................................................ 1, 4

7

8

*Recycle for Change v. City of Oakland*
  856 F.3d 666 (9th Cir. 2017) .................................................................. 8, 10, 12

9

10

*Reed v. Town of Gilbert, Ariz.*
  576 U.S. 155 (2015) ................................................................................ 10, 13

11

12

*S.G. Borello & Sons, Inc. v. Department of Industrial Relations*
  48 Cal. 3d 341 (Cal. 1989) ...........................................................*passim*

13

*Stormans, Inc. v. Selecky*
  586 F.3d 1109 (9th Cir. 2009) .............................................................. 17

14

15

*Turner Broad. Sys. v. FCC*
  512 U.S. 512 U.S. 622, 643 (1994) ............................................................. 10, 13

16

17

*U.S. v. Swisher*
  811 F.3d 299 (9th Cir. 2016) ............................................................. 14

18

19

*Watchtower Bible & Tract Society v. Village of Stratton*
  536 U.S. 150 (2002) ................................................................................ 9

20

21

*Weinberger v. Romero-Barcelo*
  456 U.S. 305 (1982) ................................................................................ 17

22

*Winter v. Nat. Res. Def. Council, Inc.*
  555 U.S. 7 (2008) ................................................................................ 8, 15

23

24

25

26

27

28

# TABLE OF AUTHORITIES
## (continued)

**Page**

**STATUTES**

California Labor Code
    § 2279 ................................................................................. 5
    § 2750.3(c)(2)(B) .............................................................. 11
    § 2775(b)(1) ........................................................................ 4
    § 2776 ................................................................................. 4
    § 2778 ............................................................................. 4, 5
    § 2780 ................................................................................. 5
    § 2783 ......................................................................... 7, 9, 10
    § 2783(e) ..................................................................... 5, 7, 10
    § 2783(h)(1) ............................................................... 5, 7, 10

California Statutes 2019, Chapter 296
    § 1(c) .......................................................................... 3, 18
    § 1(e) ...................................................................... 3, 4, 18

California Unemployment Insurance Code
    § 650 .......................................................................... 5, 10

**INTRODUCTION**

Almost two years ago, in September 2019, the Legislature determined that widespread and systematic employer misclassification of workers as independent contractors, instead of as employees, exploited working Californians by denying them significant statutory labor protections.  To combat this persistent problem, the Legislature passed Assembly Bill 5 (AB 5), which codified and expanded the application of the "ABC" test that the California Supreme Court adopted in April 2018 to simplify determinations of employment status.[1]  Since that time, federal and state courts have rejected a litany of challenges to AB 5 and its provisions.

Against this backdrop, Plaintiffs Mobilize the Message, Moving Oxnard Forward, and Starr Coalition Moving Oxnard Forward, bring First Amendment claims, arguing that AB 5 imposes improper content-based restrictions on speech, based on two exemptions from the ABC test.  Plaintiffs argue that these exemptions somehow discriminate against doorknockers and signature gatherers, but point to nothing in the statute that ties its application of a general employee classification standard to the content of any individual's work.  Like in other unsuccessful challenges to AB 5 based on First Amendment claims, Plaintiffs here cannot meet their burden to show a likelihood of success on the merits of their claims.  They also cannot meet their burden on the remaining discretionary factors to obtain a preliminary injunction.

Plaintiffs' First Amendment claims are unlikely to succeed because the challenged limitations are based on occupation; they are not restrictions on speech nor do they draw distinctions based on the content of speech.  Moreover, the fact that Plaintiffs waited almost two years to file suit against a law enacted in September 2019, demonstrates a lack of harm requiring preliminary relief.  Finally, the balance of equities weighs against preliminary relief, because an injunction

---

[1] AB 5 was subsequently amended, including by AB 2257.  *See People v. Uber Techs.*, 56 Cal.App.5th 266, 274 n.3 (Cal. Ct. App. 2020).  For ease of reference and unless otherwise specified, this brief refers to AB 5, as amended.

1    would be counter to the public interest.  For these reasons, the Court should deny

2    Plaintiffs' motion for a preliminary injunction.

3                                    **BACKGROUND**

4         This case concerns First Amendment challenges to the "ABC" test under AB

5    5, a "generally applicable labor law" pertaining to the classification of employees

6    and independent contractors.  *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 664 (9th

7    Cir. 2021); *see also People v. Super. Ct., L.A. Cty.*, 57 Cal.App.5th 619, 631 (Cal.

8    Ct. App. 2020) ("[T]he ABC test is a worker-classification test that states a general

9    and rebuttable presumption that a worker is an employee unless the hiring entity

10   demonstrates certain conditions.").

11   **A.    THE CALIFORNIA SUPREME COURT'S *DYNAMEX* DECISION ADOPTED
           THE ABC TEST.**

12

13        The distinction between workers classified as employees and those classified

14   as independent contractors is significant because California law affords employees

15   rights that independent contractors do not enjoy.  *See Dynamex Operations W. v.*

16   *Super. Ct.*, 4 Cal. 5th 903, 912 (Cal. 2018).  In April 2018, the California Supreme

17   Court held that courts must apply the "ABC test" to determine whether a worker is

18   classified as an employee for certain purposes under California's labor laws.  *Id.* at

19   916.

20        Under the ABC test, a worker is considered an employee, rather than an

21   independent contractor, unless the hiring entity establishes that the worker:  (a) is

22   "free from the control and direction of the hirer in connection with the performance

23   of the work, both under the contract for the performance of such work and in fact";

24   (b) "performs work that is outside the usual course of the hiring entity's business";

25   and (c) is "customarily engaged in an independently established trade, occupation,

26   or business of the same nature as the work performed for the hiring entity."  *Id.* at

27   916-17.

28

In adopting this test, the California Supreme Court in *Dynamex* explained that the "critically important objectives" of wage and hour laws, including ensuring low-income workers' wages and conditions despite their weak bargaining power, "support a very broad definition of the workers" who fall within the employee classification. *Id.* at 952. Similarly, a broad definition benefits "those law-abiding businesses that comply with the obligations imposed" by state labor laws, "ensuring that such responsible companies are not hurt by unfair competition from competitor businesses that utilize substandard employment practices." *Id.* Lastly, the ABC test also benefits "the public at large, because if the wage orders' obligations are not fulfilled, the public often will be left to assume the responsibility of the ill effects to workers and their families resulting from substandard wages or unhealthy and unsafe working conditions." *Id.* at 953.

**B.  ASSEMBLY BILL 5 CODIFIES THE ABC TEST AND EXPANDS ITS APPLICATION.**

In September 2019, the Legislature enacted AB 5, which codifies the ABC test and expands its scope. The Legislature found that "[t]he misclassification of workers as independent contractors has been a significant factor in the erosion of the middle class and the rise in income inequality." Stats. 2019, ch. 296, § 1(c) (Cal. 2019).[2]  In enacting AB 5, the Legislature intended "to ensure workers who are currently exploited by being misclassified as independent contractors instead of recognized as employees have the basic rights and protections they deserve under the law," including minimum wage, workers' compensation, unemployment insurance, paid sick leave, and paid family leave. *Id.* § 1(e). The Legislature noted that "a 2000 study commissioned by the U.S. Department of Labor found that nationally between 10% and 30% of audited employers misclassified workers," and that a 2017 audit program by the California Employment Development Department

---

[2]AB 5 can be found online at:
https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=201920200AB5

that conducted 7,937 audits and investigations "identified nearly *half a million* unreported employees."  (Bill Analysis, Assembly Comm. on Lab. & Emp. 7/5/19 at p. 2, available at

https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201920200 AB5 [last visited July 5, 2021] (emphasis in original).)

By codifying the ABC test, the Legislature sought to "restore[] these important protections to potentially several million workers who have been denied these basic workplace rights that all employees are entitled to under the law."  Stats. 2019, ch. 296, § 1(e) (Cal. 2019).  AB 5 codifies the ABC test adopted in *Dynamex*, and extends its scope to contexts beyond those at issue in *Dynamex*, to include (among other things) workers' compensation, unemployment insurance, and disability insurance.  Cal. Lab. Code § 2775(b)(1); *see Uber Techs.*, 56 Cal.App.5th at 274.

## C. ASSEMBLY BILL 5 EXEMPTS CERTAIN OCCUPATIONS FROM THE ABC TEST.

AB 5 also creates limited statutory exemptions to the ABC test for certain occupations and industries, where the Legislature determined the ABC test was not a good fit.  Occupations falling within some of these exemptions are instead governed by the pre-existing multifactor classification test established in *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal. 3d 341 (Cal. 1989).  *See, e.g.,* Cal. Lab. Code §§ 2776, 2778.

The Legislature considered various factors in delineating these exemptions, including whether the individuals hold professional licenses (for example, insurance brokers, physicians and surgeons, and securities dealers).  (Bill Analysis, Senate Comm. on Lab. Emp. & Ret. 7/8/19 at pp. 2-3,

https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201920200 AB5 [last visited July 5, 2021].)  Other factors considered included whether the worker is truly free from direction or control of the hiring entity (for example, workers providing hairstyling and barbering services who have their own set of

clients and set their own rates).  (*Id.*)  Still others were considered for an exemption if they perform "professional services" as a sole proprietor or other business entity, and meet specific indicia of status as independent businesses.  (*Id.*)  Attempting to identify the hallmarks of true independent contractors for purpose of the exemptions from the ABC test, the Legislature also considered the bargaining power of workers in particular occupations and industries, the ability of workers in particular occupations and industries to set their own rate of pay, and the nature of the relationship between the worker and the client.  (*Id.* at 8-10.)

AB 5 thus provides several categories of exemptions from the ABC test, including exemptions for a contract for "professional services," for relationships between sole proprietors, and for individuals involved in certain occupations related to sound recordings or musical compositions, among others.  Cal. Lab. Code §§ 2778, 2279, 2780.  At issue here are two such exemptions.  AB 5 exempts from the application of the ABC test: (1) a "direct sales salesperson as described in Section 650 of the Unemployment Insurance Code, so long as the conditions for exclusion from employment under that section are met"; and (2) a "newspaper distributor working under contract with a newspaper publisher," as defined.  *Id.* § 2783(e); § 2783(h)(1).  In turn, Section 650 of the California Unemployment Insurance Code excludes from "employment" "services performed as a real estate, mineral, oil and gas, or cemetery broker or as a real estate, cemetery or direct sales salesperson, or as a yacht broker or salesman," when certain conditions are met.  Cal. Unemp. Ins. Code § 650.

**D.    ALLEGATIONS OF THE COMPLAINT.**

Plaintiff organizations bring a First Amendment challenge to the application of the ABC test under AB 5 to two groups of workers: doorknockers and signature gatherers.

Plaintiff Mobilize the Message (MTM) hires signature gatherers and doorknockers.  (ECF No. 1 at 8 ¶ 28.)  Doorknockers "canvass neighborhoods and

1   personally engage voters in the home on behalf of [MTM's] client campaigns," to

2   try to persuade them to support candidates and ballot measures.  (*Id.*)  Signature

3   gatherers are hired to persuade voters to sign petitions to qualify measures for the

4   ballot.  (*Id.*)  MTM hires these workers on an independent contractor basis.  (*Id.* at 8

5   ¶ 29.)  MTM alleges that it left the California market after AB 5 passed.  (*Id.* at 11 ¶

6   44.)  Plaintiff Moving Oxnard Forward (MOF) is a nonprofit corporation, whose

7   stated aim is to make the government of Oxnard, California, "more efficient and

8   transparent."  (*Id.* at 3 ¶ 7.)  Plaintiff Starr Coalition for Moving Oxnard Forward

9   (Starr Coalition) is a political action committee, and handles all aspects of initiative

10  campaigns for Moving Oxnard Forward, including creating, qualifying, and

11  enacting ballot measures.  (*Id.* at 3 ¶ 8.)

12      Plaintiffs MOF and Starr Coalition allege that they want to participate in

13  Oxnard's 2022 municipal elections, and have prepared ballot language for a

14  measure for that election.  (*Id.* at 12 ¶ 46.)  Plaintiff Starr Coalition would like to

15  hire MTM to gather signatures for the Oxnard Property Tax Relief Act and other

16  measures, or, failing that, to hire its own signature gatherers as independent

17  contractors.  (*Id.* at 12 ¶¶ 47-48.)  But it is allegedly concerned that application of

18  the ABC test will mean that its attempt to hire doorknockers and signature gatherers

19  will be subject to misclassification claims under AB 5, with attendant penalties.

20  (*Id.* at 12 ¶ 49.)

21      Plaintiffs claim, without any support, that under the *Borello* standard predating

22  AB 5, "the doorknockers and signature gatherers that plaintiffs would hire would be

23  classified as independent contractors."  (ECF No. 1 at 11 ¶ 42.)  Under AB 5,

24  however, Plaintiffs allege that "these workers would most likely be classified as

25  employees."  (*Id.* at 11 ¶ 43.)  Plaintiffs contend that the workers on whose behalf

26  they bring claims "could probably not pass the 'B' portion of the ABC test, because

27  their work falls within the usual course of plaintiffs' businesses."  (*Id.*)  Plaintiffs

28

do not allege that they have been subject to a misclassification action or otherwise been threatened with any penalties under AB 5.  (*See generally* ECF No. 1.)

Plaintiffs claim that "California's regime for worker classification discriminates against speech according to its particular subject matter, function, and purpose." (ECF No. 1 at 13 ¶ 54.)  The Complaint does not cite any specific provision of AB 5 that purportedly enacts or furthers such discrimination.  Instead, Plaintiffs focus on the *lack of an exemption* for doorknockers and signature gatherers to premise their claim.  As explained above, there are multiple exemptions under AB 5, including for "direct sales salesperson" and newspaper distributor.  Cal. Lab. Code § 2783(e), (h)(1).  Plaintiffs claim that "[b]ut for Cal. Labor Code § 2783(e)," which applies the *Borello* classification standard to direct sales salespersons, such salespersons "who work on the same terms that Plaintiffs would offer doorknockers would be classified as employees under the ABC test.". (ECF No. 1 at 14 ¶ 55.)[3]  Similarly, Plaintiffs contend that "newspaper distributors and carriers who work on the same terms as plaintiffs would offer doorknockers would be classified as employees under the ABC test," but that section 2783(h)(1) exempts such carriers from the ABC test.  (*Id.* at 14 ¶ 56.)  Plaintiffs claim that these purported statutory distinctions hinge on the content of their speech, thus violating the First Amendment.

Plaintiffs bring two First Amendment claims.  First, they claim that application of the ABC test to doorknockers violates their free speech rights.  (ECF No. 1 at 13 ¶¶ 51-59.)  Second, they claim that application of the ABC test to signature gatherers violates their free speech rights.  (*Id.* at 15-16 ¶¶ 60-65.)  They sue California Attorney General Rob Bonta, in his official capacity, and seek declaratory and preliminary and permanent injunctive relief to preclude Defendant

---

[3] Plaintiffs state that section 2783(e) "causes their classification as independent contractors," but that is incorrect.  (ECF No. 1 at 14 ¶ 55.)  Under the statute's plain terms, the consequences of the exemption is that the *Borello* standard applies, not that they are automatically deemed independent contractors.  Cal. Lab. Code § 2783.

1   "from applying the ABC Test to classify Plaintiffs' doorknockers and signature
2   gatherers."  (ECF No. 1 at pp. 16-17.)

3                                   **LEGAL STANDARD**

4        "A preliminary injunction is an extraordinary remedy never awarded as of
5   right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Dymo Indus.,*
6   *Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964) (per curiam).  In seeking
7   one, Plaintiffs must demonstrate that they are likely to succeed on the merits of
8   their claims, that they are likely to suffer irreparable harm without preliminary
9   relief, that the balance of equities tips in their favor, and that an injunction is in the
10  public interest.  *Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies v. Cottrell*,
11  632 F.3d 1127, 1135 (9th Cir. 2011).

12       Moreover, because Plaintiffs seek a preliminary injunction to *change* the
13  status quo, they must carry "a heavy burden of persuasion."  *3570 East Foothill*
14  *Blvd., Inc. v. City of Pasadena*, 912 F. Supp. 1257, 1260 (C.D. Cal. 1995).
15  "Mandatory preliminary relief, which goes well beyond simply maintaining the
16  status quo pendente lite, is particularly disfavored, and should not be issued unless
17  the facts and law clearly favor the moving party."  *Anderson v. U.S.*, 612 F.2d 1112,
18  1114 (9th Cir. 1979) (citation omitted).

19                                   **ARGUMENT**

20  **I.    PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THEIR FIRST**
        **AMENDMENT CLAIMS.**
21

22       Plaintiffs cannot establish a likelihood of success on the merits of their First
23  Amendment claims.  AB 5 is a generally-applicable labor regulation governing the
24  employer-employee relationship, and does not implicate First Amendment rights.
25  Although Plaintiffs claim that AB 5 imposes improper content-based restrictions
26  through two of its exemptions, that contention is belied by the statute's plain terms.

27

28

**A.    AB 5's Plain Terms Demonstrate That It Is a Generally Applicable Economic Regulation and Does Not Target Any Speech.**

Plaintiffs' motion focuses at length on a purported "special concern for political campaign speech" under the First Amendment, citing cases involving restrictions on door-to-door canvassing and pamphleteering.  (ECF No. 9-1 at 10-11.)  For example, *Martin v. City of Struthers*, 319 U.S. 141 (1943), involved an ordinance prohibiting individuals from ringing doorbells or knocking on doors to deliver leaflets.  *Watchtower Bible & Tract Society v. Village of Stratton*, 536 U.S. 150 (2002), involved an ordinance prohibiting canvassers from entering private residential property without first obtaining a permit.  Plaintiffs' reliance on those cases misses the point.  Unlike the ordinances at issue in those cases, AB 5 is a generally applicable employment regulation, and does not target or ban any speech, political or otherwise.  Contrary to Plaintiffs' arguments, the sole consequence of AB 5 is the classification of a worker as an independent contractor or as an employee, with the attendant protections under state labor law.  And the exemptions on which Plaintiffs focus merely determine whether a particular occupation is subject to the ABC test or the *Borello* standard.  Thus, cases involving the prohibition on certain activities are inapposite.

As the Ninth Circuit has explained, restrictions on economic activity, or nonexpressive conduct generally, are not equivalent to restrictions on protected expression.  *Intern'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 408 (9th Cir. 2015).  For example, in upholding a minimum wage ordinance against a First Amendment challenge, the court noted that "the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech."  *Id.* (citation omitted); *see also Pac. Coast Horseshoeing Sch. v. Kirchmeyer*, 961 F.3d 1062, 1070 (9th Cir. 2020) (noting that "generally applicable regulatory schemes" like laws "regulating employer-employee relations . . . do not implicate the First Amendment").

1    Plaintiffs argue that AB 5 imposes "content-based speech discrimination,"

2  because state officials investigating a misclassification claim "would presumably

3  examine the worker's message to see if Section 2783's exceptions applied."  (ECF

4  No. 9-1 at 13.)  This is incorrect—any investigation regarding misclassification

5  claims would focus on the *status* of a worker, and the type of work performed, not

6  on the substantive content of his or her work product.  Indeed, none of the specific

7  criteria for the direct sales salesperson or newspaper distributor exemptions

8  involves an examination of the "worker's message."  Cal. Lab. Code § 2783(e)

9  (exemption requires meeting terms of California Unemployment Insurance Code §

10  650, including holding certain salesperson licenses or engaged in sales under

11  particular circumstances); § 2783(h)(1) (setting out conditions for newspaper

12  distributor exemption, including working under contract with specified entities).

13    "As a general rule, laws that by their terms distinguish favored speech from

14  disfavored speech on the basis of the ideas or views expressed are content based."

15  *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 643 (1994).  But "laws that confer

16  benefits or impose burdens on speech without reference to the ideas or views

17  expressed are in most instances content neutral."  *Id.*  Usually, a regulation's

18  purpose or justification will be evident on its face.  *Id.* at 642; *Reed v. Town of*

19  *Gilbert, Ariz.*, 576 U.S. 155, 171 (2015) ("As we have explained, a speech

20  regulation is content based if the law applies to particular speech because of the

21  topic discussed or the idea or message conveyed").  Here, on its face, section 2783

22  does not apply based on the message conveyed, but instead on the *occupation* in

23  which the worker is employed, *i.e.* sale of consumer products or distribution of

24  newspapers.  Cal. Lab. Code § 2783(e) (exempting workers "engaged in the trade

25  or business of primarily inperson demonstration and sales presentation of consumer

26  products" who meet specified criteria); § 2783(h)(1) (exempting workers who

27  contract with newspaper publishers to distribute newspapers).  None of these

28  exclusions hinge on the *content* of any message, Plaintiffs' unsupported arguments

notwithstanding.  *See, e.g., Recycle for Change v. City of Oakland*, 856 F.3d 666, 670 (9th Cir. 2017) ("A content-based law is one that targets speech based on its communicative content") (citation omitted).

### B. Federal Courts Have Rejected the Types of AB 5 Challenges That Plaintiffs Bring Here.

Contrary to Plaintiffs' arguments (ECF No. 9-1 at 12-15), federal courts have affirmed that AB 5 focuses on occupation and industry, and does not improperly target speech.  In fact, two courts in this Circuit have rejected First Amendment and equal protection challenges to AB 5 in similar contexts, as Plaintiffs' motion acknowledges.  (*Id.* at 15-18.)  Plaintiffs' attempt to distinguish these cases fails.

In *American Society of Journalists & Authors v. Becerra*, No. CV-19-10645-PSG, 2020 WL 1444909 (C.D. Cal., March 20, 2020) (*ASJA*), the district court denied Plaintiffs' motion for a preliminary injunction against AB 5, as applied to freelance writers and photojournalists.  Like Plaintiffs here, the plaintiffs in that case argued that certain AB 5 exemptions improperly imposed content-based restrictions, warranting strict scrutiny.  *Id.* at *6.  The district court rejected that argument, reasoning that "AB 5 does not reference any idea, subject matter, viewpoint or substance of any speech; the distinction is based on if the individual providing the service in the contract is a member of a *certain occupational classification*."  *Id.* at *7 (emphasis added).  In denying Plaintiffs' motion, the district court "agree[d] that the challenged provisions in AB 5 are based on distinctions between speakers," and noted that "[t]here is no indication that AB 5 reflects preference for the substance of content of what certain speakers have to say, or aversion to what other speakers have to say."  *Id.* at * 8.  Particularly relevant here, the court concluded that "[t]he justification for these distinctions is proper categorization of an employment relationship, unrelated to the content of speech."  *Id.*; *see also id.* ("AB 5 was not written in a way that suggests a motive to target certain content by targeting speakers").  Although that decision involved the

1    "professional services" exemption under former California Labor Code

2    § 2750.3(c)(2)(B), the same rationale applies here to Plaintiffs' challenge to the

3    direct sales salespersons and newspaper distributor exemptions.

4    Plaintiffs acknowledge *ASJA*, but argue that it is inapposite because it

5    purportedly "did not involve discrimination favoring commercial over political

6    speech," and because the distinctions drawn by the challenged exemptions here "are

7    based solely on the content of the canvassers' speech." (ECF No. 9-1 at 15-16.)

8    These arguments fail on both the facts and the law. First, as explained above,

9    Plaintiffs point to nothing in the exemptions that focus on the content of any work

10   product—instead, the exemptions hinge on the industry (like professional services,

11   sole proprietors, or direct sales salespersons). (*Id.* at 16.) Moreover, *ASJA*

12   concluded that "[t]here is no indication that AB 5 reflects preference for the

13   substance or content of what certain speakers have to say," and that "the

14   justification for these [exemption] distinctions is proper categorization of an

15   employment relationship, unrelated to the content of speech." 2020 WL 1444909,

16   at *8. Contrary to Plaintiffs' argument, the challenged restrictions to AB 5 do not

17   hinge on any aspect of speech, content, or viewpoint. In the context of such

18   "speaker-based" laws, to establish a First Amendment claim, the challenger must

19   show that the law reflects an improper preference for the favored speech. Plaintiffs

20   do not and cannot demonstrate such a preference. *See Recycle for Change*, 856

21   F.3d at 670.

22   Similarly, in *Crossley v. California*, 479 F. Supp. 3d 901 (S.D. Cal. 2020), the

23   district court rejected a First Amendment challenge to AB 5, brought by data

24   processing entities that (like Plaintiffs) utilized individuals and businesses to collect

25   signatures to qualify measures for the ballot. The district court rejected the

26   argument that the claims warranted heightened scrutiny because of "their proximity

27   to the voting process." *Id.* at 912. The court explained that "the initiative process is

28   one step removed from the act of voting since these proposed ballot initiatives have

not yet qualified for inclusion on the voting ballot." *Id.*  And, like the court in *ASJA*, the district court in *Crossley* concluded that "AB 5 is a generally applicable law that regulates the *classification of employment relationships* across the spectrum and does not single out any profession or group of professions." *Id.* at 916 (emphasis added).  Like the Plaintiffs here, the plaintiffs in *Crossley* pointed to exempted professions—including the direct sales salespersons and newspaper distributor exemptions Plaintiffs focus on—and argued that these were not meaningfully different from their own work as signature collectors. *Id.* at 914. Nonetheless, the court concluded that such exemptions "do[] not regulate conduct that is inherently expressive." *Id.* at 916.

Plaintiffs argue that "*Crossley* plainly erred in describing AB 5 as 'a generally applicable law that regulates the classification of employment relationships across the spectrum and does not single out any profession or group of professions.'" (ECF No. 9-1 at 16-17, citing *Crossley*.)  But their mere disagreement does not undermine the district court's conclusions, which are bolstered by other decisions in federal and state court rejecting challenges to AB 5.  *See Cal. Trucking Ass'n*, 996 F.3d at 664 (in rejecting federal preemption challenge to AB 5, noting that it is a "generally applicable labor law"); *Olson v. State of Cal.*, No. CV 19-10956-DMG, 2020 WL 905572, at *8 (C.D. Cal. Feb. 10, 2020) (in denying request to preliminarily enjoin AB 5, rejecting claim that AB 5 singled out gig economy companies and noting "the expansive language of the statute"); *People v. Super. Ct. of L.A. Cty.*, 57 Cal. App. 5th 619, 631 (Cal. Ct. App. 2020) (in rejecting federal preemption challenge to AB 5, concluding "the ABC test is a law of general application"); *Parada v. E. Coast Transp., Inc.*, 62 Cal.App.5th 692, 702 (Cal. Ct. App. 2021) (same).

Plaintiffs argue, despite the case law to the contrary, that strict scrutiny applies here.  (ECF No. 9-1 at 14.)  But speaker-based laws demand strict scrutiny only when "they reflect the Government's preference for the substance of what the

favored speakers have to say (or aversion to what the disfavored speakers have to say)." *Turner Broadcasting Sys.*, 512 U.S. at 658; *Reed*, 576 U.S. at 170-71. Here, Plaintiffs cannot meet their burden to demonstrate that the challenged industry exemptions are based on a content preference, or that they otherwise "cannot be justified without reference to the content of the regulated speech." *U.S. v. Swisher*, 811 F.3d 299, 313 (9th Cir. 2016) (en banc). In fact, as demonstrated above, the challenged exemptions are content neutral and can be justified without reference to any content of a purportedly regulated message. Furthermore, there is no evidence that they were adopted by the Legislature "because of disagreement with the message" conveyed. *Id.*

Plaintiffs are not likely to succeed on the merits of their First Amendment claims. For this reason alone, they are not entitled to the preliminary injunctive relief they seek.

## II.   PLAINTIFFS CANNOT MEET THEIR BURDEN ON THE DISCRETIONARY FACTORS.

Plaintiffs also fail to show that they will suffer irreparable harm if an injunction does not issue. Initially, Plaintiffs unduly delayed in bringing their claims. Moreover, their generic argument of injury is insufficient to meet their burden.

A plaintiff's "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Miller for and on behalf of N.L.R.B. v. Cal. Pac. Medic. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993) (citation omitted); *see also Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076, 1091 n.27 (3d Cir. 1984) ("[T]he district court may legitimately think it suspicious that the party who asks to preserve the status quo through interim injunctive relief has allowed the status quo to change through unexplained delay.").

AB 5 was signed into law in September 2019, and went into effect on January 1, 2020. (ECF No. 1 at 4-5 ¶¶ 13-15.) Yet Plaintiffs did not bring their claims here

until June 2021.  Plaintiffs delayed almost two years after AB 5 was enacted, and over 15 months after it went into effect before filing suit and seeking preliminary injunctive relief.  Courts in this Circuit have found unexplained delays of three months in seeking injunctive relief to indicate absence of irreparable harm.  *First Franklin Fin. Corp. v. Franklin First Fin. Ltd.*, 356 F. Supp. 2d 1048, 1055 (N.D. Cal. 2005); *see also Metromedia Broad. Corp. v. MGM/UA Entm't Co, Inc.*, 611 F. Supp. 415, 427 (C.D. Cal. 1985) (concluding that four-month delay warranted denying injunctive relief); *Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp. 3d 877, 898-99 (N.D. Cal. 2019).  Plaintiffs' only purported basis for urgency here is that "the time to start gathering signatures for the 2022 election is now" (ECF 9-1 at 7), but the fact that the City of Oxnard would hold municipal elections in 2022 presumably has been known since well before the passage of AB 5, and Plaintiffs do not acknowledge or try to explain their delay in bringing this action or why preliminary injunctive relief is now required when they could have brought this action at any point since AB 5's passage.

Plaintiffs also do not meet their burden to establish irreparable harm in the absence of preliminary relief.  *Winter*, 555 U.S. at 20.  Instead, Plaintiffs support their motion with a generic argument that they meet the irreparable harm element because they allegedly show "the existence of a colorable First Amendment claim," and otherwise rely on general statements that "loss of First Amendment freedoms, for even minimal periods of time, constitutes irreparable injury."  (ECF No. 9-1 at 18-19.)  But, as discussed above, Plaintiffs have failed to establish they are likely to prevail on the merits, and there is no presumption of constitutional injury absent a sufficient demonstration of success on the merits.  And, even if Plaintiffs had demonstrated a likelihood of success on the merits (which they have not), the Court does not simply "assume" that they have met their burden of establishing the remaining elements for preliminary injunctive relief.  Rather, Plaintiffs must demonstrate that they are likely to suffer irreparable injury in the absence of a

preliminary injunction, and that the balance of equities and the public interest tip in their favor.  *Doe v. Harris*, 772 F.3d 563, 582-3 (9th Cir. 2014) (noting that courts "do not simply assume" that the discretionary factors "collapse into the merits of the First Amendment claim.") (citation omitted).  Here, Plaintiffs have not done so.

First, because Plaintiffs seek to enjoin the enforcement of state law, the requested relief would change rather than preserve the status quo.  The "status quo" is the ABC test, which has been in effect since the California Supreme Court's *Dynamex* decision in April 2018 (for minimum wage protections), and since January 1, 2020 under AB 5 (for other protections including workers' compensation).  *See Golden Gate Restaurant Ass'n v. City & Cty. of S. F.*, 512 F.3d 1112, 1116 (9th Cir. 2008) (explaining that an injunction against a newly enacted law does not preserve the status quo).  This, in turn, means that  Plaintiffs must establish that the law and facts clearly favor their position, not simply that they are likely to succeed on their claims.  *Anderson v. U.S.*, 612 F.2d 1112, 1114 (9th Cir. 1979) (citation omitted).   But, even though Plaintiffs seek to *alter* the status quo, they have not shown that the facts and the law "clearly favor" such relief.  *Id.*  Indeed, Plaintiffs do not cite to any authority holding doorknockers and signature gatherers are either employees or independent contractors under either *Borello* or the ABC test—thus, they have failed to show that the application of either test will have any effect on them at all.

Next, it is the State that will suffer irreparable injury if this Court enjoins AB 5's enforcement.  "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."  *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted); *Coalition for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) ("[I]t is clear that a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined."); *but see Latta v. Otter*, 771 F.3d 496, 500 & n.1 (9th Cir. 2014) (per curiam).  These concerns are

particularly acute here, because a preliminary injunction would prevent the State from enforcing laws designed to address the widespread problem of misclassification of employees, and the attendant deprivation of protections under state labor law to which they are properly entitled.  Plaintiffs argue that any harm to the state from misclassification amounts solely to a monetary loss (ECF No. 9-1 at 19), but that is incorrect and ignores the legitimate and significant state interest in protecting employees from misclassification.

## III.   THE PUBLIC INTEREST WEIGHS AGAINST AN INJUNCTION.

Plaintiffs must also establish that the public interest warrants a preliminary injunction. Where a party requests an injunction enjoining enforcement of state law, like here, the public interest is clearly involved.  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009).  And "[i]n cases where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff." *Fund for Animals v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.").

Plaintiffs do not meet this burden, and merely rely on a general argument that the public interest weighs in favor of preventing constitutional violations.  (ECF No. 9-1 at 19.)  Plaintiffs' perfunctory argument fails because the public interest weighs heavily against enjoining state law.  Here, a court order enjoining the State's enforcement of AB 5 would further delay the State's ability to effectively address the misclassification of workers and the public consequences of such misclassification, which the Legislature concluded warranted remediation.  *Olson*, 2020 WL 905572, at **13-16 (concluding that balance of equities and public interest weigh against enjoining AB 5); *ASJA*, 2020 WL 1444909, at *11 (denying preliminary injunction staying AB 5, noting "the impact of an injunction on the State's ability to properly classify and provide protection of the labor laws to those

1    that it determined should be classified as employees").  In enacting the statute, the

2    Legislature intended "to ensure workers who are currently exploited by being

3    misclassified as independent contractors instead of recognized as employees have

4    the basic rights and protections they deserve under the law," including minimum

5    wage, workers' compensation, unemployment insurance, paid sick leave, and paid

6    family leave.  Stats. 2019, ch. 296, § 1(e) (Cal. 2019).  AB 5 "restores these

7    important protections to potentially several million workers who have been denied

8    these basic workplace rights that all employees are entitled to under the law."  (*Id.*)

9    These paramount state interests outweigh Plaintiffs' interests in avoiding

10    compliance with the law.

11        In enacting AB 5, the Legislature concluded that misclassification of workers

12    as independent contractors has harmed workers and contributed to the shrinking of

13    the middle class.  Stats. 2019, ch. 296, § 1(c), (e) (Cal. 2019).  Given that AB 5 was

14    enacted only after extensive discussion during the legislative process about its

15    impact and necessity, and negotiation with various stakeholders including industry,

16    labor, and others, the public interest weighs heavily against a preliminary

17    injunction.  As noted above, courts hold that states suffer harm when enforcement

18    of their laws is enjoined.  *King*, 567 U.S. at 1303 (citation omitted).  Where, as

19    here, "responsible public officials" have considered the public interest and enacted

20    a statute, the public interest weighs against enjoining such legislation.  *Golden Gate*

21    *Restaurant Ass'n*, 512 F.3d at 1126-27.  "[I]t is in the public interest that federal

22    courts of equity should exercise their discretionary power with proper regard for the

23    rightful independence of state governments in carrying out their domestic policy."

24    *Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943).

25                          **CONCLUSION**

26        For these reasons, the Court should deny Plaintiffs' motion for a preliminary

27    injunction.

28

1   Dated:  July 12, 2021                    Respectfully submitted,

2                                            ROB BONTA
                                             Attorney General of California
3                                            HEATHER HOESTEREY
                                             Supervising Deputy Attorney General
4
                                                 /s/ Jose A. Zelidon-Zepeda
5
                                             JOSE A. ZELIDON-ZEPEDA
6                                            Deputy Attorney General
                                             Attorneys for Defendant Attorney General
7                                            Rob Bonta, in his official capacity

8   SA2021303104
    42775884.docx
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

Case Name:   **Mobilize the Message, LLC et al. v. Rob Bonta**
Case No.     **2:21-cv-05115**

I hereby certify that on <u>July 12, 2021</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>July 12, 2021</u>, at San Francisco, California.


| | |
|---|---|
| Robert Hallsey | /s/ Robert Hallsey |
| Declarant | Signature |

SA2021303104
42775912.docx