UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Mobilize the Message LLC et al.,

        Plaintiffs,

        v.

Rob Bonta,

        Defendant.

Case No. 2:21-cv-05115-VAP-JPRx

**Order DENYING Motion for Preliminary Injunction (Dkt. 9)**

Before the Court is Plaintiffs' Mobilize the Message, LLC, Moving Oxnard Forward, Inc., and Starr Coalition for Moving Oxnard Forward ("Plaintiffs") Motion for Preliminary Injunction.  (Dkt. 9).  After considering all the papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced at the hearing conducted on August 2, 2021, the Court DENIES the Motion.

## I.    BACKGROUND

**A.    Assembly Bill 5**

This case challenges Assembly Bill 5 ("AB 5"), codified at Cal. Labor Code § 2775(b)(1), a California law pertaining to the classification of employees and independent contractors.

In 2018, the California Supreme Court in *Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903, 916 (2018), held that courts should apply a

three-part test, the "ABC Test", to determine whether a worker is properly classified as an employee for certain purposes.  Prior to 2018, California's test for classifying workers as either employees or independent contractors was set forth, for all purposes, in *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341 (1989).  The ABC Test classifies workers as employees unless an employer establishes:

> (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact;
>
> (B) that the worker performs work that is outside the usual course of the hiring entity's business; and
>
> (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed.

Cal. Labor Code § 2775(b)(1).  On September 18, 2019, the California Legislature codified the ABC test adopted in *Dynamex* by enacting AB 5.  *See* A.B. 5, Ch. 296, 2019–2020 Reg. Sess. (Cal. 2019) ("AB 5"); Cal. Labor Code § 2775(b)(1).

Under AB 5, the ABC test is the standard used for ascertaining whether a worker is an employee.  The law nevertheless creates certain exceptions for categories of workers that remain subject to the multi-factor

"*Borello*" standard.  As relevant here, workers that fall within such exceptions include "[a] direct sales salesperson as described in Section 650 of the Unemployment Insurance Code so long as the conditions for exclusion from employment under that section are met."  Cal. Labor Code § 2783(e).  Per that provision, "'[e]mployment' does not include services performed as a . . . direct sales salesperson . . . by an individual" if "[t]he individual . . . is engaged in the trade or business of primarily in person demonstration and sales presentation of consumer products, including services or other intangibles, in the home . . . or otherwise than from a retail or wholesale establishment…."  Cal. Unemp. Ins. Code § 650.  Newspaper distributors and carriers are also exempted from the ABC test and are instead subject to *Borello*.  Cal. Labor Code § 2783(h)(1).

### B.     Plaintiffs and the Alleged Burden of AB 5

Plaintiff Mobilize the Message, LLC ("MTM") hires "doorknockers" to canvass neighborhoods and personally engage voters in the residence on behalf of its client campaigns.  MTM also hires signature gatherers to persuade voters, at their residence and in public places, to sign petitions that would qualify measures for the ballot.

Plaintiff Moving Oxnard Forward, Inc., ("MOF"), a California nonprofit corporation dedicated to improving the city of Oxnard, maintains a political action committee, Plaintiff Starr Coalition for Moving Oxnard Forward ("Starr Coalition"), that creates, qualifies, and works to enact ballot measures in Oxnard's municipal elections.

Prior to AB 5's enactment, MTM provided its services in California. MTM abandoned the California market upon AB 5's enactment because, *inter alia*, it could not afford the administrative expenses of hiring its independent contractors as employees.

MOF and Starr Coalition claim that they intend to participate in Oxnard's 2022 municipal elections which require signature gathering for the ballots to begin now. Plaintiffs nevertheless refrain from hiring their doorknockers and signature gatherers as employees because they claim it is unfeasible for them to do so under the current regulatory scheme.

## C.   Procedural Background

On June 23, 2021, Plaintiffs filed this lawsuit against Defendant Rob Bonta, in his official capacity as Attorney General of California ("Defendant"), arguing that AB 5 discriminates against speech based on its content. (*See* Dkt. 1, at 13). Specifically, Plaintiffs contend that California favors commercial speech over political speech because AB 5 exempts certain workers, such as newspaper deliverers and cosmetics salespersons, from being classified as employees whereas signature gatherers and doorknockers for political campaigns are considered employees under the current framework. (*See id*.) According to Plaintiffs, "[b]y classifying doorknockers per the ABC test, while classifying direct salespersons, newspaper distributors, and newspaper carriers per *Borello*, Defendant, under color of law deprives Plaintiffs … of their right of free speech guaranteed by the First and Fourteenth Amendment." (Dkt. 1).

On June 24, 2021, Plaintiffs filed the instant Motion asking the Court to enjoin Defendant from applying the ABC Test to classify Plaintiffs' doorknockers and signature gatherers as employees. Defendant filed an Opposition to the Motion on July 12, 2021. (Dkt. 20). Plaintiffs filed a Reply on July 19, 2021. (Dkt. 21).

## II.   LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy ...; it is never awarded as of right." *Munaf v. Green*, 553 U.S. 674, 689-90 (2007) (citations omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). In this Circuit, a plaintiff may obtain a preliminary injunction upon a lesser showing of the merits if the balance of hardships tips "sharply" in his favor, and he has satisfied the other two *Winter* requirements. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

## III.   DISCUSSION

As discussed below, Plaintiffs fail to satisfy the requirements set forth in *Winter* for injunctive relief.

### 1.   Likelihood of Success on the Merits

The Court finds that Plaintiffs have failed to establish a likelihood of success on the merits. "Likelihood of success on the merits is 'the most

important factor' in determining whether interim, injunctive relief is warranted." *Environmental Protection Information Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020). "Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three *Winter* elements." *Al-Nasser v. Serdy*, No. 2:20CV03582 ODW (Ex), 2020 WL 3129206, at *2 (C.D. Cal. June 12, 2020) (*citing Garcia v. Google, Inc*., 786 F.3d 733, 740 (9th Cir. 2015)).

Plaintiffs allege two claims against Defendant, arguing that the application of the ABC Test violates the First Amendment as applied to their doorknockers and signature gatherers. Plaintiffs have not satisfied their burden of showing they are likely to succeed on either claim.

   A. <u>First Amendment</u>

If a law "imposes content-based restrictions on speech, those provisions can stand only if they survive strict scrutiny." *Reed v. Town of Gilbert, Ariz*., 135 S. Ct. 2218, 2231 (2015); *Turner Broad. Sys., Inc. v. F.C.C*., 512 U.S. 622, 642 (1994) ("Our precedents thus apply the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content."). By contrast, "regulations that are unrelated to the content of speech are subject to an intermediate level of scrutiny." *Turner*, 512 U.S. at 642. "[R]estrictions on protected expression are distinct from restrictions on economic activity or, more generally, on nonexpressive conduct ... [T]he First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." *Int'l Franchise Ass'n, Inc. v. City of Seattle*,

803 F.3d 389, 408 (9th Cir. 2015) (quoting *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565 (2011)). The question is whether there is conduct with a "significant expressive element that drew the legal remedy in the first place" or the statute has the "inevitable effect of singling out those engaged in expressive activity." *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706–07 (1986). "[G]enerally applicable economic regulations [affecting] rather than targeting news publications" pass constitutional muster. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 896 (9th Cir. 2018) (generally applicable wage law targeting employer use of employee wages regulated conduct and was not subject to First Amendment scrutiny).

Plaintiffs contend that AB 5 imposes content-based restrictions and thus is subject to strict scrutiny.  The Court disagrees.

Here, the challenged exemptions in AB 5 are neither content-based nor otherwise require heightened scrutiny.  As other courts in this circuit have held, "AB 5 applies a particular test to determine if a worker is considered an 'employee' as opposed to an 'independent contractor,' to the Labor Code … [i]t is thus directed at economic activity generally [and] does not directly regulate or prohibit speech."  *See Am. Soc'y of Journalists & Authors, Inc. v. Becerra*, No. CV1910645 PSG (KSx), 2020 WL 1444909, at *7 (C.D. Cal. Mar. 20, 2020), appeal dismissed, No. 20-55408, 2020 WL 6075667 (9th Cir. Aug. 20, 2020).

Plaintiffs nevertheless argue at length that AB 5 makes distinctions between speakers' messages, such as between newspaper deliverers and

campaign signature gatherers, and therefore expresses a content preference.  See Dkt. 9-1, at 11-12 ("The regulatory scheme, on its face, implicates Plaintiffs' political speech.  Their workers are subject to the ABC test for all purposes … [y]et other workers, who knock on the same doors and walk the same streets to speak to the same people and deliver them papers, are classified as independent contractors per *Borello*.  The distinctions?  Rather than talk politics, these workers perform 'in person demonstration[s] and sales presentation[s].'").  Indeed, Plaintiffs contend that state investigators would need to examine the "worker's message to see if [an] exception applied."  These arguments are unpersuasive.

"There is no indication that AB 5 reflects preference for the substance or content of what certain speakers have to say, or aversion to what other speakers have to say."  *Am. Soc'y of Journalists & Authors, Inc.*, 2020 WL 1444909, at *8.  Rather, as Defendant points out, the distinctions between cosmetics salespersons and campaign signature gatherers or doorknockers under AB 5 are based on the worker's occupation.  The distinctions based on the types of products sold or services rendered are directly related to the occupation or industry of a worker as opposed to the statements the worker uses to sell such goods or perform such services.  Courts in this circuit have held the same and have reasoned that "[t]he justification for these distinctions is proper categorization of an employment relationship, unrelated to the content of speech." (*Id.*; *see* also *Crossley v. California*, 479 F. Supp. 3d 901, 916 (S.D. Cal. Aug. 17, 2019)).  The Court sees no reason to reach a different result here.  (*Id.*)

Plaintiffs' attempt to distinguish these cases is unpersuasive. Notably, Plaintiffs argue *Crossley* is inapposite because that court "plainly erred in describing AB 5 as 'a generally applicable law that regulates the classification of employment relationships across the spectrum and does not single out any profession or group of professions.'" (Dkt. 9-1, at 17). The Court disagrees. Plaintiffs' conclusory statement is unsupported as they have failed to point to any facts suggesting that AB 5 favors commercial speech over political speech due to its exemptions.

The Court agrees with the courts in this circuit that have found AB 5 to be a generally applicable law that regulates classifications of employment relationships by industry as opposed to speech. Plaintiffs' argument that the content of what a worker says will determine whether an AB 5 exemption applies in this context lacks merit. The more sensible interpretation is that the distinctions hinge on the worker's industry regardless of speech. While some of AB 5's exemptions arguably may have been arbitrarily designed or are the result of political motives, "[a]ccommodating one interest group is not equivalent to intentionally harming another." *Gallinger v. Becerra*, 898 F.3d 1012, 1021 (9th Cir. 2018). Accordingly, Plaintiffs have failed to show that strict scrutiny applies.

Plaintiffs do not argue whether AB 5 could pass the lesser rational based review. (*See* Dkt. 9-1, at 18 ("Plaintiffs would disagree that AB 5 could pass even rational basis review, but that is not the test here.")). Given that Plaintiffs have only argued the strict scrutiny portion of the analysis that

the Court rejects, Plaintiffs have failed to satisfy their heavy burden of showing they are likely to succeed on their First Amendment Claims.

### 2. Irreparable Harm

Although it need not address this factor, the Court notes that Plaintiffs also fail to show the need for emergency injunctive relief to prevent immediate and irreparable harm. *Al-Nasser v. Serdy*, No. 220CV03582 ODW (Ex), 2020 WL 3129206, at *2 (C.D. Cal. June 12, 2020) (*citing Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015)) ("Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three *Winter* elements."). "An essential prerequisite to the granting of a preliminary injunction is a showing of irreparable injury to the moving party in its absence." *Dollar Rent A Car of Washington, Inc. v. Travelers Indem. Co.*, 774 F.2d 1371, 1375 (9th Cir. 1985).

As Defendant notes, AB 5 was signed into law in September 2019. Nevertheless, Plaintiffs waited until June 2021, nearly two years later, to bring their claims regarding AB 5's exemptions. Plaintiffs admit that they halted all operations in California after AB 5's implementation and have thus been impacted by the regulation long before this year. Although Plaintiffs now claim there is urgency given the upcoming 2022 elections, Plaintiffs have failed to explain their delay in seeking their requested relief for a declaration that AB 5 should not apply to their workers.

Although a delay in filing for injunctive relief is not determinative, it "implies a lack of urgency and irreparable harm." See *Vital Pharms., Inc. v. PhD Mktg., Inc.*, No. 220CV06745 RSWL (JCx), 2020 WL 6545995, at *8 (C.D. Cal. Nov. 6, 2020) (citing to *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) (citations omitted); *see also Dahl v. Swift Distrib., Inc.*, No. CV 10-00551 SJO (RZx), 2010 WL 1458957, at *3 (C.D. Cal. Apr. 1, 2010) (noting that an "unexplained delay ... undercuts a claim that an injunction is necessary to prevent immediate and irreparable injury")). Here, Plaintiffs' two-year delay in filing this Motion weighs against irreparable harm. *See id.* (citing to *AK Metals, LLC v. Norman Indus. Materials, Inc.*, No. 12cv2595-IEG (WVG), 2013 WL 417323, at *10 (S.D. Cal. Jan. 31, 2013) ("Plaintiff's [two-month] delay in filing the motion ... weighs against the immediacy of the harm.")).

### IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs have not satisfied their heavy burden of establishing they are entitled to the extraordinary remedy of a preliminary injunction. Accordingly, the Court DENIES Plaintiffs' Motion.

**IT IS SO ORDERED.**

Dated: 8/9/21

Virginia A. Phillips
United States District Judge